## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS
## EAST ST. LOUIS DIVISION

| | |
|---|---|
| SHAWN MILLER-KRAUSZ and KATHRYN HODGES, Individually and for Others Similarly Situated<br><br>v.<br><br>ANDERSON HEALTHCARE | **Case No.** _____<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br>Rule 23 Class Action |

## CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Shawn Miller-Krausz (Miller-Krausz) and Kathryn Hodges (Hodges) bring this class and collective action to recover unpaid wages and other damages from Anderson Healthcare (Anderson) for violations of the Fair Labor Standards Act (FLSA), Illinois Minimum Wage Law (IMWL), and Illinois Wage Payment and Collection Act (IWPCA).

2.      Anderson employed Miller-Krausz and Hodges as its Hourly Employees (defined below) in Illinois.

3.      Anderson pays Miller-Krausz, Hodges, and its other Hourly Employees by the hour.

4.      Miller-Krausz, Hodges, and the other Hourly Employees regularly work more than 40 hours a week.

5.      But Anderson does not pay them for all their hours worked.

6.      Instead, Anderson deducts 30 minutes a day from Miller-Krausz's, Hodges's, and its other Hourly Employees' recorded hours for so-called "meal breaks," regardless of whether they actually receive a *bona fide* meal break (Anderson's "auto-deduct policy").

7.      Thus, Anderson does not pay Miller-Krausz, Hodges, and the other Hourly Employees for that time.

8. But Miller-Krausz, Hodges, and the other Hourly Employees do not actually receive *bona fide* meal breaks.

9. Instead, Anderson requires them to remain on duty and perform compensable work throughout their shifts and regularly subjects them to work interruptions during unpaid "meal breaks."

10. Additionally, Anderson requires the Hourly Employees to clock in and out for their shifts via its timekeeping system, but Anderson automatically rounds their clock in and clock out punches to the nearest quarter hour for its own primary benefit (Anderson's "rounding policy").

11. Finally, Anderson pays Miller-Krausz, Hodges, and other Hourly Employees non-discretionary bonuses, including sign on bonuses, that it excludes from their regular rates of pay for overtime purposes (Anderson's "bonus pay scheme").

12. Anderson's auto-deduct policy, rounding policy, and bonus pay scheme violate the FLSA and IMWL by depriving Miller-Krausz, Hodges, and the other Hourly Employees of overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for overtime hours worked.

13. Anderson's auto-deduct policy and rounding policy violate the IWPCA by depriving Miller-Krausz, Hodges, and the other Hourly Employees of earned wages, at their agreed hourly rates, for all hours worked.

## JURISDICTION & VENUE

14. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

15. This Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

16. This Court has general personal jurisdiction over Anderson because it is an Illinois corporation.

17.    Venue is proper because Anderson maintains its principal place of business in Maryville, Madison County, Illinois, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

18.    Anderson employed Miller-Krausz as a part-time registered nurse (PRN) from approximately April 2018 until July 2022 in Staunton and Maryville, Illinois.

19.    Anderson has employed Hodges as a registered nurse (RN) since approximately June 2024 in Maryville, Illinois.

20.    Throughout their employment, Anderson employed Miller-Krausz and Hodges under its auto-deduct policy, rounding policy, and/or bonus pay scheme.

21.    Miller-Krausz's written consent is attached as **Exhibit 1**.

22.    Hodge's written consent is attached as **Exhibit 2.**

23.    Miller-Krausz and Hodges bring this class and collective action on behalf of themselves and similarly situated Anderson employees.

24.    The putative FLSA collective is defined as:

> **All hourly employees who worked under Anderson's auto-deduct policy, rounding policy, and/or bonus pay scheme during the last three years through final resolution of this action (the "FLSA Collective Members").**

25.    The putative IMWL class is defined as:

> **All hourly employees who worked under Anderson's auto-deduct policy, rounding policy, and/or bonus pay scheme in Illinois during the last three years through final resolution of this action (the "IMWL Class Members").**

26.    The putative IWPCA class is defined as:

> **All hourly employees who worked under Anderson's auto-deduct policy and/or rounding policy in Illinois during the last 10 years, through final resolution of this action (the "IWPCA Class Members").**

27.     The FLSA Collective Members, IMWL Class Members, and IWPCA Class Members are collectively referred to as the "Hourly Employees."

28.     Anderson is an Illinois corporation headquartered in Maryville, Illinois.

29.     Anderson may be served with process through its registered agent: **Michael Marshall, 6800 State Route 162, Maryville, Illinois 62062**, or wherever he may be found.

### FLSA COVERAGE

30.     At all relevant times, Anderson was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

31.     At all relevant times, Anderson was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

32.     At all relevant times, Anderson was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

33.     At all relevant times, Anderson had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

34.     At all relevant times, Miller-Krausz, Hodges, and the other Hourly Employees were Anderson's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

35.     At all relevant times, Miller-Krausz, Hodges, and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

### FACTS

36.     Anderson touts itself as "a regional healthcare network … [that] provide[s] more

coordinated care with broader geographic coverage for our patients."[1]

37.    Anderson employs more than 1,600 employees "to provide more coordinated care with broader geographic coverage for our patients throughout the Metro-East region."[2]

38.    To provide its patient care services, Anderson hires workers like Miller-Krausz, Hodges, and the other Hourly Employees to work in its healthcare facilities.

39.    To this end, Anderson advertises open job positions across its facilities and solicits applications through its website.[3]

40.    Anderson classifies Miller-Krausz, Hodges, and its other Hourly Employees as non-exempt and pays them by the hour.

41.    While job titles and duties may differ, Miller-Krausz, Hodges, and the other Hourly Employees are subject to Anderson's same or similar illegal policies—its auto-deduct policy, rounding policy, and bonus pay scheme—for similar work.

42.    For example, Miller-Krausz worked for Anderson as a PRN from approximately April 2018 until July 2022.

43.    Anderson has employed Hodges as an RN since approximately June 2024.

44.    Miller-Krausz's and Hodges's job duties include assessing and monitoring patients, checking vital signs, performing and charting treatments, and generally assisting other medical staff in accordance with Anderson's policies and procedures.

45.    Anderson agreed to pay Miller-Krausz approximately $31.50 an hour for her first 40

---

[1] https://andersonhealthcare.org/ (last visited February 5, 2026).
[2] https://andersonhospital.org/careers/ (last visited February 4, 2026).
[3] https://andersonhospital.org/careers/ and
https://www.paycomonline.net/v4/ats/web.php/portal/8236C138F02B1587E10CAE245C2E6EE
6/career-page (last visited February 5, 2026).

hours worked.

46.     Additionally, Anderson agreed to pay Hodges approximately $38.47 an hour for her first 40 hours worked plus time and a half premium overtime wages for her hours worked in excess of 40 in a workweek.

47.     Throughout their employment, Anderson requires Miller-Krausz and Hodges to report their hours worked to Anderson.

48.     Anderson's records reflect Miller-Krausz's and Hodges's "on the clock" hours each workweek.

49.     Miller-Krausz typically worked approximately 8 hours a day and 3 to 5 days a week "on the clock" (24 to 40 hours a workweek).

50.     Hodges typically works 3 to 4 days a week and 12 to 13 hours a day "on the clock" (36 to 52 hours a workweek).

51.     But throughout their employment, Anderson has failed to pay Miller-Krausz and Hodges for all hours worked.

52.     Instead, Anderson subjects Miller-Krausz and Hodges to its auto-deduct policy.

53.     Specifically, Anderson automatically deducts 30 minutes a day from Miller-Krausz's and Hodges's recorded hours for so-called "meal breaks."

54.     Thus, Anderson does not pay Miller-Krausz and Hodges for that time.

55.     But throughout their employment, Miller-Krausz and Hodges have not actually received *bona fide* meal breaks.

56.     Instead, Anderson regularly requires Miller-Krausz and Hodges to perform compensable work throughout their shifts, including during their so-called "meal breaks."

57.     As a result of its auto-deduct policy, Anderson has failed to pay Miller-Krausz and Hodges earned wages (at their agreed hourly rate) for all hours worked.

58.     Likewise, as a result of its auto-deduct policy, Anderson fails to pay Miller-Krausz and Hodges overtime wages for all overtime hours during workweeks in which they work more than 40 hours.

59.     Miller-Krausz, Hodges, and the other Hourly Employees perform their jobs under Anderson's supervision and use materials, equipment, and technology Anderson approves and supplies.

60.     Anderson requires Miller-Krausz, Hodges, and its other Hourly Employees, across its facilities, to abide by common work, time, pay, meal break, and overtime policies and procedures in the performance of their jobs.

61.     At the end of each pay period, Miller-Krausz, Hodges, and the other Hourly Employees receive wages from Anderson that are determined by common systems and methods that Anderson selects and controls.

62.     Anderson requires Miller-Krausz, Hodges, and its other Hourly Employees to record their hours worked using Anderson's designated timekeeping system.

63.     Thus, just as Anderson's records reflect the number of hours Miller-Krausz and Hodges work "on the clock" each workweek, Anderson also maintains records of the number of hours the Hourly Employees work "on the clock" each workweek.

64.     The other hourly employees typically work approximately 40 to 60 hours a workweek.

65.     But, like Miller-Krausz and Hodges, Anderson fails to pay them for all their hours worked.

66.     Indeed, Anderson subjects its other Hourly Employees to the same or similar auto-deduct policy it imposes on Miller-Krausz and Hodges.

67.     Specifically, Anderson automatically deducts 30 minutes a day from the other Hourly Employees' for so called "meal breaks."

68.    Anderson automatically deducts this time regardless of whether they actually receive full, uninterrupted, 30-minute meal breaks.

69.    Anderson simply assumes the other Hourly Employees receive *bona fide* meal breaks each shift they work.

70.    But, like Miller-Krausz and Hodges, the other Hourly Employees do not actually receive *bona fide* meal breaks.

71.    Instead, like Miller-Krausz and Hodges, Anderson requires other Hourly Employees remain on duty and perform compensable work throughout their shifts, including during unpaid "meal breaks."

72.    And, like Miller-Krausz and Hodges, Anderson subjects its other Hourly Employees to work interruptions during unpaid "meal breaks."

73.    These work interruptions prevent the Hourly Employees from engaging in personal activities during unpaid "meal breaks."

74.    In other words, they are not relieved of all work duties during their unpaid "meal breaks."

75.    Rather, during their unpaid "meal breaks," Miller-Krausz, Hodges, and the other Hourly Employees are forced to remain on duty and perform their regular job duties.

76.    Thus, Miller-Krausz, Hodges, and the other Hourly Employees routinely spend their unpaid "meal breaks" performing work for Anderson's—not their own—predominant benefit.

77.    This unpaid time is compensable under the FLSA, IMWL, and IWPCA because Anderson knew, or should have known: (1) Miller-Krausz, Hodges, and its other Hourly Employees were performing unpaid work during their "meal breaks"; (2) they were interrupted with work duties during attempted "meal breaks"; (3) they were not completely relieved of all work duties during their unpaid "meal breaks"; (4) they entirely skipped their "meal breaks" due to work demands; (5) their

unpaid "meal breaks" were less than 20 consecutive minutes; (6) they were not free to engage in personal activities during their unpaid "meal breaks" because of work interruptions; and/or (7) they spent their unpaid "meal breaks" performing their regular job duties for Anderson's predominant benefit.

78.     This unpaid time is also compensable under the IWPCA because Anderson agreed to pay Miller-Krausz, Hodges, and its other Hourly Employees set hourly rates of pay for all hours worked, and Anderson failed to pay them these agreed, earned wages for the work they performed during on duty "meal breaks."

79.     In addition to deducting from these employees' wages for so called "meal breaks," Anderson also subjects Miller-Krausz, Hodges, and its other Hourly Employees to its rounding policy.

80.     Specifically, Anderson automatically rounds Miller-Krausz's, Hodges's, and its other Hourly Employees' clock in and clock out punches to the nearest quarter hour for its own primary benefit and to the detriment of the Hourly Employees.

81.     And Anderson prohibits Miller-Krausz, Hodges, and its other Hourly Employees from clocking in for their shifts more than 7.5 minutes before their start times and clocking out more than 7.5 minutes after their end times.

82.     Anderson takes disciplinary action or threatens to do so if Miller-Krausz, Hodges, or other Hourly Employees clock in past their scheduled start time or clock out before their scheduled end time.

83.     Likewise, Anderson takes disciplinary action or threatens to do so if they clock in more than 7.5 minutes prior to their scheduled start time or clock out more than 7.5 minutes after their scheduled end time.

84.     Anderson further requires and expects Miller-Krausz, Hodges, and its other Hourly Employees to perform their normal job duties immediately upon clocking in.

85. By enforcing these policies, Anderson ensures its rounding policy benefits Anderson to the detriment of Miller-Krausz, Hodges, and its other Hourly Employees.

86. Thus, under Anderson's rounding policy, Miller-Krausz, Hodges, and other Hourly Employees are denied wages for hours worked, and overtime wages for overtime hours during workweeks in which they work more than 40 hours.

87. When they work more than 40 hours in a workweek, Anderson does not pay them overtime wages for all overtime hours worked because Anderson fails to include time these employees worked "off the clock" during their unpaid "meal breaks" and due to its rounding policy.

88. Anderson fails to exercise its duty as Miller-Krausz's, Hodges's, and the other Hourly Employees' employer to ensure these employees are not performing work that Anderson does not want performed during unpaid "meal breaks."

89. And Anderson knows, should know, or recklessly disregards whether Miller-Krausz, Hodges, and its other Hourly Employees routinely perform work "off the clock" during their unpaid "meal breaks."

90. Thus, Anderson required, requested, suffered, or permitted Miller-Krausz, Hodges, and its other Hourly Employees to work during their unpaid "meal breaks."

91. Despite accepting the benefits, Anderson does not pay Miller-Krausz, Hodges, and its other Hourly Employees for the compensable work they perform during their automatically deducted "meal breaks."

92. Additionally, Anderson does not pay Hodges and other Hourly Employees at the required premium overtime rates for hours worked in excess of 40 in a workweek.

93. Instead, Anderson pays Hodges and other Hourly Employees under its bonus pay scheme.

94.     Specifically, Anderson agrees to pay and subsequently pays Hodges and other Hourly Employees non-discretionary bonuses, including shift bonuses and sign on bonuses, based on criteria Anderson sets.

95.     But Anderson excludes these non-discretionary bonuses from their regular rates of pay for overtime purposes during workweeks in which these employees earn these non-discretionary bonuses and work in excess of 40 hours.

96.     For example, Anderson paid Hodges a $15,000 sign on in three $5,000 increments, one of which was paid during the pay period ending June 28, 2025:

| | Rate | Hours/Units | Current Period | Year To Date |
|---|---|---|---|---|
| **Earnings** | | | | |
| Regular | 38.44 | 0.00 | 0.00 | 31309.28 |
| 2nd Shift | 2.75 | 0.00 | 0.00 | 453.75 |
| 3rd Shift | 3.50 | 0.00 | 0.00 | 685.14 |
| A. PTO Fixed | 38.44 | 0.00 | 0.00 | 3997.76 |
| Bereavement | 38.44 | 0.00 | 0.00 | 922.56 |
| Call Back | 57.66 | 0.00 | 0.00 | 1845.12 |
| Call Back 3rd Shift | 3.50 | 0.00 | 0.00 | 24.50 |
| Call Back Weekend Day | 2.00 | 0.00 | 0.00 | 31.00 |
| Call Time 2 | 2.75 | 0.00 | 0.00 | 481.25 |
| Education | 38.44 | 0.00 | 0.00 | 355.57 |
| Holiday Worked 1.50 Additional | 56.25 | 0.00 | 0.00 | 675.01 |
| Holiday Worked 2nd Shift | 2.75 | 0.00 | 0.00 | 13.75 |
| Holiday Worked 3rd Shift | 3.50 | 0.00 | 0.00 | 24.50 |
| NS-PTO Fixed | 38.44 | 0.00 | 0.00 | 461.28 |
| Weekend 2nd Shift | 4.00 | 0.00 | 0.00 | 141.00 |
| Weekend 3rd Shift | 4.75 | 0.00 | 0.00 | 391.87 |
| Weekend Day | 2.00 | 0.00 | 0.00 | 94.50 |
| Weighted OT Converter | 19.45 | 0.00 | 0.00 | 908.33 |
| Bonus | | | 0.00 | 114.41 |
| Bonus 2 | | | 0.00 | 5000.00 |
| Bonus 3 | | | 5000.00 | 5000.00 |
| Bonus Discretionary | | | 0.00 | 2214.02 |
| **Gross Pay** | | | **5000.00** | **55144.60** |

97.     But Anderson did not include this bonus in Hodges's regular rate of pay for overtime purposes during the pay period ending June 28, 2025 (nor any other pay period):

| Earnings | Rate | Hours/Units | Current Period | Year To Date |
|---|---|---|---|---|
| Regular | 38.44 | 86.00 | 3305.84 | 31309.28 |
| 2nd Shift | 2.75 | 0.00 | 0.00 | 453.75 |
| 3rd Shift | 3.50 | 0.00 | 0.00 | 685.14 |
| A. PTO Fixed | 38.44 | 0.00 | 0.00 | 3997.76 |
| Bereavement | 38.44 | 0.00 | 0.00 | 922.56 |
| Call Back | 57.66 | 0.00 | 0.00 | 1845.12 |
| Call Back 3rd Shift | 3.50 | 0.00 | 0.00 | 24.50 |
| Call Back Weekend Day | 2.00 | 0.00 | 0.00 | 31.00 |
| Call Time 2 | 2.75 | 0.00 | 0.00 | 481.25 |
| Education | 38.44 | 2.00 | 76.88 | 355.57 |
| Holiday Worked 1.50 Additional | 56.25 | 0.00 | 0.00 | 675.01 |
| Holiday Worked 2nd Shift | 2.75 | 0.00 | 0.00 | 13.75 |
| Holiday Worked 3rd Shift | 3.50 | 0.00 | 0.00 | 24.50 |
| NS-PTO Fixed | 38.44 | 0.00 | 0.00 | 461.28 |
| Weekend 2nd Shift | 4.00 | 0.00 | 0.00 | 141.00 |
| Weekend 3rd Shift | 4.75 | 0.00 | 0.00 | 391.87 |
| Weekend Day | 2.00 | 11.25 | 22.50 | 94.50 |
| Weighted OT Converter | 19.45 | 8.25 | 160.46 | 908.33 |
| Bonus | | | 0.00 | 114.41 |
| Bonus 2 | | | 0.00 | 5000.00 |
| Bonus 3 | | | 0.00 | 5000.00 |
| Bonus Discretionary | | | 0.00 | 2214.02 |
| **Gross Pay** | | 107.50 | 3565.68 | 55144.60 |

98.    Thus, under its bonus pay scheme, Anderson does not pay Hodges and other Hourly Employees overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

### CLASS AND COLLECTIVE ACTION ALLEGATIONS

99.    Miller-Krausz and Hodges bring their claims as a class and collective action under FED. R. CIV. P. 23 and Section 216(b) of the FLSA on behalf of themselves and the other Hourly Employees.

100.    Like Miller-Krausz and Hodges, the other Hourly Employees are victimized by Anderson's auto-deduct policy, rounding policy, and/or bonus pay scheme.

101.    Other Hourly Employees who worked with Miller-Krausz and Hodges indicated they were paid in the same or similar manner, performed similar work, and were subject to Anderson's auto-deduct policy, rounding policy, and/or bonus pay scheme.

102.    Based on their experience, Miller-Krausz and Hodges are aware that Anderson's auto-deduct policy, rounding policy, and bonus pay scheme were imposed on other Hourly Employees.

- 12 -

103.    The Hourly Employees are similarly situated in the most relevant respects.

104.    Even if their precise job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to earned wages at their agreed rates for all hours worked and overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked over 40 in a workweek.

105.    The only relevant inquiry is whether the Hourly Employees were subjected to Anderson's auto-deduct policy, rounding policy, and/or bonus pay scheme.

106.    Therefore, the specific job titles or locations of the various Hourly Employees do not prevent class or collective treatment.

107.    Rather, Anderson's auto-deduct policy, rounding policy, and bonus pay scheme render the Hourly Employees similarly situated for the purpose of determining their right to earned wages (at their agreed rates) and overtime wages based on their true regular rates of pay.

108.    Anderson's records reflect the number of hours the Hourly Employees recorded working each week, "on the clock."

109.    Anderson's records further reflect it deducted 30 minutes a workday from the Hourly Employees for so-called "meal breaks."

110.    Anderson's records show it automatically rounded the Hourly Employees' punch in and punch out time to the nearest quarter hour for its primary benefit.

111.    And Anderson's records show it paid the Hourly Employees non-discretionary bonuses it failed to include in their regular rates of pay for overtime purposes.

112.    The back wages owed to Miller-Krausz, Hodges, and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

113.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Anderson's records, and there is no detraction from the common nucleus of liability facts.

114.    Therefore, the issue of damages does not preclude class or collective treatment.

115.    Miller-Krausz's and Hodges's experiences are typical of the experiences of the other Hourly Employees.

116.    Miller-Krausz and Hodges have no interest contrary to, or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

117.    Miller-Krausz and Hodges have an interest in obtaining the unpaid wages owed to the Hourly Employees under federal and Illinois law.

118.    Miller-Krausz, Hodges, and their counsel will fairly and adequately protect the interests of the other Hourly Employees.

119.    Miller-Krausz and Hodges retained counsel with significant experience litigating complex class and collective actions.

120.    A class and collective action is superior to other available means for the fair and efficient adjudication of this lawsuit.

121.    Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Anderson will reap the unjust benefits of violating the FLSA, IMWL, and IWPCA.

122.    Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

123.    Indeed, the multiplicity of actions would create hardship for the Hourly Employees, the Court, and Anderson.

124.    Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

125.    Accordingly, a class and collective action is an appropriate method for the fair and efficient adjudication of this lawsuit.

126.    The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

127.    Among the common questions of law and fact are:

> (a)    Whether Anderson engaged in a policy and practice of deducting 30 minutes a workday from the Hourly Employees for "meal breaks";

> (b)    Whether Anderson required, requested, suffered, or permitted the Hourly Employees to work during their unpaid "meal breaks";

> (c)    Whether Anderson rounded the Hourly Employees' punch in and punch out times to the nearest quarter hour for its primary benefit;

> (d)    Whether Anderson paid the Hourly Employees non-discretionary bonuses;

> (e)    Whether Anderson excluded non-discretionary bonuses from the Hourly Employees' regular rates of pay;

> (f)    Whether Anderson failed to pay the Hourly Employees overtime wages at the required premium rates—based on all remuneration— for all overtime hours worked;

> (g)    Whether Anderson failed to pay the Hourly Employees all their earned wages (at their agreed hourly rates) for all hours worked in violation of the IWPCA.

> (h)    Whether Anderson's decision not to pay the Hourly Employees

overtime wages at the required rates—based on all remuneration—
for all overtime hours worked was made in good faith; and

(i)        Whether Anderson's violations were willful.

128.    As part of its regular business practices, Anderson intentionally, willfully, and repeatedly violated the FLSA, IMWL, and IWPCA with respect to the Hourly Employees.

129.    There are many similarly situated Hourly Employees who have been denied overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

130.    The Hourly Employees are known to Anderson, are readily identifiable, and can be located through Anderson's business and personnel records.

### ANDERSON'S VIOLATIONS WERE WILLFUL

131.    Anderson knew it employed Miller-Krausz, Hodges, and the other Hourly Employees.

132.    Anderson knew it was subject to the FLSA's overtime provisions.

133.    Anderson knew the FLSA required it to pay non-exempt employees, including the Hourly Employees, overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

134.    Anderson knew each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because these employees were required to report their "on the clock" hours via Anderson's timekeeping system.

135.    Anderson knew Miller-Krausz, Hodges, and the other Hourly Employees were non-exempt employees entitled to overtime pay.

136.    Anderson knew it automatically deducted 30 minutes a workday from the Hourly Employees for so called "meal breaks."

- 16 -

137.    Anderson knew the Hourly Employees did not actually receive *bona fide* 30-minute meal breaks each workday.

138.    Anderson knew it automatically rounded the Hourly Employees' punch in and punch out times to the nearest quarter hour for its own primary benefit and to the Hourly Employees' detriment.

139.    Anderson knew it paid Miller-Krausz, Hodges, and the other Hourly Employees non-discretionary bonuses.

140.    Anderson knew it was required to include these non-discretionary bonuses in their regular rates of pay.

141.    Anderson knew these non-discretionary bonuses were not included in Miller-Krausz's, Hodges's, and the other Hourly Employees' regular rates of pay for overtime purposes.

142.    And Anderson knew the FLSA requires it to pay Miller-Krausz, Hodges, and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

143.    Anderson's failure to pay Miller-Krausz, Hodges, and the other Hourly Employees overtime at the required rate—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

144.    Anderson knowingly, willfully, and/or in reckless disregard of the FLSA carried out its auto-deduct policy, rounding policy, and bonus pay scheme that deprived the Hourly Employees of overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 a workweek.

## COUNT I
### FAILURE TO PAY OVERTIME UNDER THE FLSA
### (FLSA COLLECTIVE)

145.    Miller-Krausz and Hodges bring their FLSA claim as a collective action on behalf of themselves and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

146.    Anderson violated, and is violating, the FLSA by employing non-exempt employees, such as the FLSA Collective Members, in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for hours worked in excess of 40 in a workweek.

147.    Anderson's unlawful conduct harmed the FLSA Collective Members by depriving them of overtime wages they are owed.

148.    Accordingly, Anderson owes the FLSA Collective Members the difference between the wages actually paid and the required overtime wages actually earned.

149.    Because Anderson knew or showed reckless disregard for whether its auto-deduct policy, rounding policy, and bonus pay scheme violated the FLSA, Anderson owes the FLSA Collective Members these wages for at least the past 3 years.

150.    Anderson is also liable to the FLSA Collective Members for an amount equal to all their unpaid overtime wages as liquidated damages.

151.    Finally, the FLSA Collective Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COUNT II
### FAILURE TO PAY OVERTIME WAGES UNDER THE IMWL
### (IMWL CLASS)

152.    Miller-Krausz and Hodges bring their IMWL claim on behalf of themselves and the IMWL Class Members pursuant to FED. R. CIV. P. 23.

153.    The conduct alleged violates the IMWL. 820 ILCS 105/1, *et seq.*

- 18 -

154.    At all relevant times, Anderson was an "employer" within the meaning of the IMWL.

155.    At all relevant times, Anderson employed the IMWL Class Members as covered "employees" within the meaning of the IMWL.

156.    The IMWL requires employers, like Anderson, to pay employees, including the IMWL Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 in a workweek.

157.    The IMWL Class Members are entitled to overtime pay under the IMWL.

158.    Anderson violated, and is violating, the IMWL by failing to pay the IMWL Class Members overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek. *See* 820 ILCS 105/4a.

159.    Anderson's unlawful conduct harmed the IMWL Class Members by depriving them of the overtime wages they are owed.

160.    Accordingly, the IMWL Class Members are entitled to recover their unpaid overtime compensation owed from the 3 years prior to the filing of this Complaint, treble damages, as well as monthly statutory damages, plus interest, attorney's fees, costs, and expenses. *See* 820 ILCS 105/12(a).

<u>COUNT III</u>
**FAILURE TO PAY ALL EARNED WAGES UNDER THE IWPCA**
**PURSUANT TO 820 ILCS 115/1, *ET SEQ.***
**(IWPCA CLASS)**

161.    Miller-Krausz and Hodges bring their IWPCA claim on behalf of themselves and the other IWPCA Class Members.

162.    Anderson's conduct violates the IWPCA. 820 ILCS 115/1, *et seq.*

163.    At all relevant times, Anderson was subject to the IWPCA because Anderson was (and is) an "employer" within the meaning of the IWPCA.

164.    At all relevant times, Anderson employed the IWPCA Class Members as its covered "employees" within the meaning of the IWPCA.

165.    The IWPCA requires employers, like Anderson, to pay employees, including the IWPCA Class Members, for all the hours they work at the rate(s) agreed to by the parties.

166.    During the course of their employment, Anderson agreed to pay each IWPCA Class Member an hourly rate for all the hours of work they performed.

167.    Each IWPCA Class Member accepted Anderson's offer.

168.    But during the course of their employment, Anderson failed to pay the IWPCA Class Members for all the time they worked at the hourly rates Anderson agreed to pay them because Anderson failed to include the time that they worked during their automatically deducted "meal breaks" in their total number of hours worked.

169.    Thus, Anderson violated, and is violating, the IWPCA by failing to pay the IWPCA Class Members all their earned wages (at the hourly rates Anderson agreed to pay them) for all the hours of work they performed for Anderson's benefit.

170.    Anderson's unlawful conduct harmed the IWPCA Class Members by depriving them of earned wages they are owed.

171.    Accordingly, the IWPCA Class Members are entitled to recover their unpaid earned wages (at their agreed hourly rates), as well as monthly statutory damages, plus interest, attorneys' fees, costs, and expenses. *See* 820 ILCS 115/14(a).

## JURY DEMAND

172.    Miller-Krausz and Hodges demand a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, Miller-Krausz and Hodges, individually and on behalf of the other Hourly Employees, seek the following relief:

a.  An Order designating this lawsuit as a collective action and authorizing notice to the Hourly Employees allowing them to join this action by filing a written notice of consent;

b.  An Order certifying the putative classes action pursuant to FED. R. CIV. P. 23;

c.  An Order appointing Miller-Krausz, Hodges, and their counsel to represent the interests of the Hourly Employees;

d.  An Order finding Anderson liable to the Hourly Employees for unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

e.  An Order finding Anderson liable to IMWL Class Members for unpaid overtime wages owed under the IMWL, treble damages, as well as monthly statutory damages;

f.  An Order finding Anderson liable to the IWPCA Class Members for unpaid earned wages owed under the IWPCA, as well as monthly statutory damages;

g.  A Judgment against Anderson awarding Miller-Krausz, Hodges, and the other Hourly Employees all their unpaid overtime wages, liquidated damages, treble damages, monthly statutory damages, and any other penalties, at the highest available rates, under the FLSA, IMWL, and IWPCA;

h.  An Order awarding attorneys' fees, costs, and expenses;

i.  An Order awarding pre- and post-judgement interest at the highest applicable rates; and

j.      Such other and further relief as may be necessary and appropriate.

Dated: February 11, 2026

Respectfully submitted,

**WERMAN SALAS P.C.**

By: */s/ Douglas M. Werman*
Douglas M. Werman
Maureen A. Salas
77 W. Washington St., Suite 1402
Chicago, Illinois 60602
Phone: (312) 419-1008
dwerman@flsalaw.com
msalas@flsalaw.com
*Local Counsel for Plaintiff*

Michael A. Josephson*
TX Bar No. 24014780
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax:     (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
TX Bar No. 24001807
**BRUCKNER BURCH, PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax:     (713) 877-8065
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR MILLER-KRAUSZ,
HODGES, & THE HOURLY EMPLOYEES**